UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANGELLA FARR CROSBY,<br><br>                    Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN, Commissioner of the Social Security Administration,[1]<br><br>                    Respondent. | Case No. 3:12-cv-00181-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

       Currently pending before the Court is Petitioner Angella Crosby's request for review of the Respondent's denial of social security benefits, filed on April 10, 2012. (Dkt. 1) The Court has reviewed the Petition and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL HISTORY

       Angella Crosby ("Petitioner") filed an application on December 27, 2007, for a period of disability insurance benefits, and an application for supplemental security income on December 31, 2007. In both applications, Petitioner alleged disability beginning August 2, 2006, from her bipolar and anxiety disorders, chronic asthma, and hypothyroidism. The applications were denied initially and on reconsideration. A hearing was conducted on July 20, 2010, before Administrative Law Judge ("ALJ") Marie Palachuk. ALJ Palachuk heard

---

[1] Carolyn W. Colvin is substituted for Michael J. Astrue. Colvin became the Acting Commissioner of Social Security Administration on February 14, 2013.

**MEMORANDUM DECISION AND ORDER - 1**

testimony from Petitioner, medical expert Margaret R. Moore, PhD., and vocational expert Daniel R. McKinney, Sr. At the time of the July 20, 2010 hearing, Petitioner was 38 years of age. Petitioner completed high school and three years of college coursework, and obtained a certificate in administrative accounting. Her prior work experience includes, among other work, work as a surface mine worker, bookkeeper, and data entry clerk.

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of August 2, 2006. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's asthma, bipolar disorder, and personality disorder were severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found the Petitioner retained the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations: avoid concentrated exposure to respiratory irritants; limit to simple, repetitive, and well-learned tasks of three steps or less in a low stress environment; limit to superficial contact with coworkers and the public; and only occasional supervision by others. With this RFC, the ALJ concluded Petitioner could not perform any of her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At step five, the ALJ concluded Plaintiff could work in other occupations, such as assembly occupations, inspector/checker, or hand packer/packager.

ALJ Palachuk issued a decision finding Petitioner not disabled on August 27, 2010. Petitioner timely requested review by the Appeals Council, which denied her request for review on February 10, 2012. Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**1.     Standard of Review**

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. §

405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v.Underwood*, 487 U.S. 552, 565 (1988).

      The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

      When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

**MEMORANDUM DECISION AND ORDER - 4**

2. **Petitioner's Credibility**

Petitioner first disputes the ALJ's credibility determination. Petitioner argues that the ALJ failed to properly consider Petitioner's testimony, and that the evidence the ALJ relied upon to make her credibility determination does not meet the "clear and convincing" standard. Specifically, Petitioner first contends that the ALJ's reliance upon Petitioner's daily activities is insufficient to support an adverse credibility finding. Petitioner argues that her activities, which include meal preparation, housework, driving a car, shopping in stores, and performing community service as part of her probation, are insufficient, without more information, to support the ALJ's credibility determination. Second, Petitioner contends that the ALJ's reliance upon Petitioner's failure to take her prescribed medication to control her bipolar symptoms is insufficient to support an adverse credibility finding, because the AJL failed to consider Petitioner's explanations for not taking her medications. And finally, Petitioner asserts that the ALJ's reliance upon one statement by one of Petitioner's care providers that Petitioner exaggerates her symptoms is included in the ALJ's decision, without discussion, and is therefore insufficient to support the ALJ's finding that Petitioner is less than fully credible about the limiting effect of her bipolar and anxiety disorders. Respondent argues that substantial evidence in the record supports the ALJ's conclusion that Petitioner is not credible concerning the limiting effects of her psychological disabilities.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may

not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those

**MEMORANDUM DECISION AND ORDER - 6**

symptoms. *See* Soc. Sec. Ruling 96-7p.

At the hearing before ALJ Palachuck, Petitioner testified that she had trouble "getting along" with people, and was terminated from employment because of her inability to "deal with" people in the work place. (AR 67—68.) She described that, when she felt symptoms of depression, she stayed in bed, sometimes for up to three days, and that such disabling depression occurred at least once per month. (AR 71—72.) But she testified that her medication helps, and controls her symptoms, including her symptoms of depression. (AR 74, 81.) To avoid people, Petitioner grocery shops at 3:00 in the morning. (AR 75.) But, she was able to perform volunteer work, (AR 76—78, 559), keeping track of statistics at a social services center, for over one year on a part-time basis. And, Petitioner successfully completed a period of probation requiring community service as part of her sentence for embezzlement. (AR 553, 561.) Petitioner further contended that she could walk for only one block, and needed to rest for ten minutes before resuming, and that she had difficulty lifting, standing, and climbing stairs. (AR 253, 41.)

The Court finds that the ALJ did not err in finding Petitioner's self-report not credible to the extent Petitioner described in her testimony. ALJ Palachuck cited specific evidence in the record to support her adverse credibility finding, such as Petitioner's daily activities, her successful community service work, and volunteer work. ALJ Palachuck noted also that Petitioner accompanied her husband to his AA group. (AR 40.) The ALJ remarked that Petitioner's treating psychiatrist, Dr. Holmes, noted several times in his treatment notes that, despite going through stressful times, Petitiner's insight and judgment remained intact, she was doing "pretty well," and was continuing with her community service and volunteer work. (AR 42.) The ALJ's findings are therefore supported by

**MEMORANDUM DECISION AND ORDER - 7**

specific evidence in the record. (AR 378, 384.) Further, Petitioner's extensive mental health treatment records make no mention of Petitioner's depression causing her to stay in bed for days, nor do they suggest physical limitations to the extent Petitioner described.[2]

An adverse credibility finding may be based upon a claimant's activities if the claimant engages in daily activities that involve skills transferrable to the workplace. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, there is evidence in the record, which the ALJ cited, to support that Petitioner's activities were transferable to a work setting, and proof that Petitioner spent a substantial part of her day engaged in these skills. *Orn*, 495 F.3d at 639. Petitioner engaged in her community service and volunteer work on a part time basis, as noted by the ALJ, and Petitioner reported to her psychiatrist that her volunteer work could turn into a paying job. (AR 551, 558, 559.) [3] And it was not just the fact that Petitioner engaged in activities around the house, but the "wide variety" of activities she engaged in on a regular basis, that the ALJ cited as support for her adverse credibility finding. *See Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999) ("If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."). Petitioner reported she cooked twice a week, so long as she did not forget the timer; did laundry, cleaning, and

---

[2] Petitioner was treated for low back pain in September and November of 2011, (AR 829, 826), but with physical therapy, she was able to take a "fairly long walk" and could do all normal activities of daily living without back pain. (AR 832.) On October 15, 2011, Petitioner reported walking a half-mile without pain. (AR 834.) Other than limited and conservative treatment for back pain during the fall of 2011, there are no other treatment notes indicating Petitioner complained of back pain or being unable to walk, lift, or stand. There are no treatment notes indicating Petitioner's asthma contributed to Petitioner's claimed inability to walk.

[3] On March 12, 2009, Dr. Holmes indicated in his notes that Petitioner's volunteer work "very well could turn into a paying job." (AR 559.) The ALJ cited this progress note in her opinion. (AR 42.)

**MEMORANDUM DECISION AND ORDER - 8**

yard work; cared for her children; went shopping and to AA meetings twice a week with her husband; went to her doctor's appointments and Al-Anon meetings;[4] and that she and her husband would plan their day each morning, making sure they went to their appointments. (AR 248—255.) The ALJ, in noting Petitioner's daily activities, including her volunteer work, pointed to the contradictions between Petitioner's reported activities and her asserted limitations as an issue of credibility. It is not for the Court to second-guess the ALJ's findings in that regard.

Turning to her medication compliance, Petitioner argues that the ALJ failed to discuss the reasons for Petitioner's lack of medication compliance, and posited that she might not be able to afford them. Petitioner further argues that the record did not establish that her medication consistently or significantly improved her mood. If a claimant provides evidence of a good reason for not taking medications for her symptoms, her symptom testimony cannot be rejected for not doing so. *Smolen v. Chater*, 80 F.3d 1273, 1085 (9th Cir. 1996). If there is a good reason, such as not being able to afford treatment, then the fact that a claimant is not taking medication is not a clear and convincing reason for discrediting symptom testimony.

Here, the ALJ cited as a reason for her adverse credibility determination Petitioner's failure to follow treatment recommendations, both with respect to Petitioner's asthma and her bipolar disorder. First, the ALJ noted that Petitioner continued to smoke, despite being advised to quit. Second, the ALJ noted that Petitioner had run out of medication, allowing her asthma to worsen before she sought treatment. As to her psychological impairments, the ALJ noted she frequently failed to take her prescribed medication, which impaired her

---

[4] Petitioner's medical records, as a whole, indicate she kept her regular appointments with her doctors, social workers, and counselors and rarely missed them.

**MEMORANDUM DECISION AND ORDER - 9**

improvements. Yet, the ALJ cited Petitioner's primary care psychiatrist's treatment notes, which noted that Petitioner's moods were quite stable despite not being 100% compliant with her medication. (AR 42.)

There is no evidence in the record to suggest that Petitioner could not afford her medications, as Petitioner suggests. Quite the contrary---once Petitioner became eligible for Medicaid, she was able to receive her medications on a regular basis. (AR 338, 379.)[5] Petitioner instead chose not to take her medications. (AR 379; 354; 398, 551.) But her treating psychiatrist, Dr. Holmes, reported frequently that her medications were having a good effect. (AR 384, 392). The ALJ cited specific instances in the record supporting her reasoning for rejecting Petitioner's testimony about the limiting effects of her asthma and psychological symptoms based upon her failure to follow her prescribed treatment regimen. (AR 42.)

Lastly, Petitioner objects to the ALJ's use of a note written by one of Petitioner's social workers that Petitioner appeared to be exaggerating her symptoms, and contends more discussion is required because Listing 12.04 and 12.07 both note "over-reporting" as among Petitioner's symptoms. The ALJ may rely upon a claimant's tendency to exaggerate her symptoms as part of her credibility analysis. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, the ALJ gave a detailed explanation regarding her reliance on the opinion of one of Petitioner's care providers that Petitioner exaggerated her symptoms. The ALJ discussed the comment in the context of Petitioner's failure to follow her prescribed treatment regimen. (AR 42.) And, the ALJ noted that Petitioner's psychiatrist as well as other providers noted that, despite her spotty adherence to her medication regimen, she

---

[5] In July of 2005, Petitioner complained of not being able to afford her medications. (AR 338.) But, once she became eligible for Medicaid on or about October 9, 2007, she had no problem obtaining medication. (AR 379.)

**MEMORANDUM DECISION AND ORDER - 10**

consistently appeared to be doing quite well. During her mental status examinations, she was described as articulate, interactive, and intelligent. These statements, cited by the ALJ in her decision, buttress the ALJ's reliance upon the comment that Petitioner could be exaggerating her symptoms, and were given as reasons for discrediting Petitioner's testimony.

the Court finds no merit to Petitioner's contention that the ALJ improperly considered the evidence and testimony in the record which led the ALJ to find Petitioner not credible. The Court is left with the firm impression that substantial evidence supports the ALJ's credibility determination.

**3. Medical Source Testimony**

The Court next turns to Petitioner's arguments that the ALJ erred in giving less weight to the treating and examining source opinions of Drs. Holmes and Alexander, as well as Petitioner's other treatment and care providers, and instead acceped the opinion of medical expert Dr. Moore. Petitioner complains that the opinion of a non-examining medical expert does not constitute sufficient evidence when the record contains conflicting observations and opinions rendered by Petitioner's treating physicians and care providers.

Case law from the United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). And, an examining physician's opinion is entitled to greater weight than the opinion

of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Morgan v. Comm'r of Social Security Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). An ALJ may reject the testimony of a treating physician, in favor of a nonexamining, nontreating physician when she gives specific, legitimate reasons for doing so, and those reasons are supported by substantial evidence in the record. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995.) Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when the opinions are supported by other evidence in the record and are consistent with it. *Morgan*, 169 F.3d at 600. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Morgan*, 169 F.3d at 600–601. The ALJ need not accept the opinion of any physician if the opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Additionally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

595 (9th Cir. 1999). Further, an ALJ may reject a physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ is also required to evaluate "other source" opinions, such as the claimant's social workers and psychologists. The opinions of an "other source" are not entitled to the same deference as medical sources. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). To discount testimony from an "other source," the ALJ must give "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111.

Here, the ALJ gave several germane reasons for discounting the opinions of Dr. Holmes and Dr. Alexander in favor of the conflicting testimony of Dr. Moore, and these reasons were supported by substantial evidence in the record. ALJ Palachuk discussed Petitioner's anxiety, panic, and social interaction problems, especially in the context of a work setting. (AR 40). The ALJ noted that Petitioner had problems with past employment, and difficulty maintaining employment, especially when her employment involved working with other people. (AR 40, 41). But the ALJ concluded that Petitioner's social functioning was of the moderate, not marked, level, considering she was able to attend AA meetings with her husband and was working in a volunteer capacity.

The ALJ did accept some of the findings of Dr. Alexander, a consulting psychologist, who concluded Petitioner had average intellectual ability and intact remote, recent, and immediate memory. (AR 40, 42.) But the ALJ rejected Dr. Alexander's opinion that Petitioner suffered from marked limitations regarding Petitioner's ability to interact appropriately in the workplace, adapt to change and respond to authority, because the ALJ determined that portion of the opinion was inconsistent with Petitioner's activities and the other objective medical

**MEMORANDUM DECISION AND ORDER - 13**

evidence. The primary inconsistency found was Dr. Holmes's observations of Petitioner's demeanor and functioning over a long period of time, including periods of stress when she appeared to be doing well. (AR 42-43.) The ALJ noted that Dr. Holmes consistently observed and recorded Petitioner to be doing well, with good sense of humor, insight and judgment, and presented as articulate, interactive, and intelligent, despite Petitioner describing her symptoms otherwise. (AR 42.) The ALJ therefore implicitly rejected Dr. Holmes's "check the box" Mental Residual Functional Capacity Assessment, wherein Dr. Holmes opined Petitioner had "marked" limitations with certain aspects of sustained concentration and persistence, as well as with maintaining social functioning. (AR 753—56.) However, Dr. Holmes on the same form was of the opinion that Petitioner could carry out simple instructions, and had only moderate limitations with interacting appropriately with supervisors. (AR 755.)

      The ALJ further considered the opinion of James Phillips, PhD, who provided psychosocial rehabilitation services to Petitioner since May of 2010. (AR 43.) Dr. Phillips noted that Petitioner's primary work problem was her ability to interact socially. (AR 633.) But Dr. Phillips never indicated in his letter that Petitioner was precluded from all work, only that her primary problem was her ability to interact appropriately in a social work setting. (AR 633.) The ALJ gave Dr. Phillips's opinion "some weight," to the extent that the opinion was consistent with the other objective medical evidence, but concluded that Petitioner's social interaction problems would not preclude all work activity. This opinion is consistent with Dr. Phillips's letter and the record as a whole. Indeed, her social worker Sandy Phillips echoed that Petitioner does have a hard time being around people and handling stress, but despite learning new ways to approach stressful situations, Petitioner was not motivated to put coping skills into place. (AR 715.)

**MEMORANDUM DECISION AND ORDER - 14**

Dr. Moore testified at the hearing, and upon her review of the entire medical record, she agreed Petitioner suffered from bipolar symptoms and a significant personality disorder. Taking that into account, Dr. Moore was of the opinion that Petitioner suffered from moderate limitations in the ability to work with others, and to interact appropriately with the public or accept criticism from supervisors. The ALJ accepted Dr. Moore's opinion as consistent with the medical evidence and the record as a whole. (AR 43.)

ALJ Palachuk took Petitioner's limitations into account when she determined Petitioner's RFC limited her to simple, repetitive tasks involving no more than three step instructions in a low stress environment with only superficial interaction with others and the public. The ALJ's RFC determination factored in the evidence that Petitioner should work primarily alone, with only occasional supervision, and should work primarily with things rather than people. Given this RFC, the ALJ concluded, based upon the vocational expert's opinion, that there was a wide variety of jobs Petitioner could perform, such as assembly occupations, or as an inspector or checker, or as a hand packer or packager. (AR 45.) The ALJ's RFC determination is consistent with the medical evidence as a whole, wherein not one care provider conclusively opined that Petitioner could not work, only that Petitioner's greatest obstacle would be her interpersonal challenges.

Finally, Petitioner contends that the ALJ failed to discuss Petitioner's GAF scores, which indicated scores ranging from 50 (serious symptoms) to 65 (moderate to mild symptoms). There were eleven GAF reports in the record, from January 1, 2005, through June 7, 2011. But while a GAF score may be useful, the failure to reference the GAF score in the RFC, standing alone, does not render the ALJ's RFC conclusion inaccurate. *Howard v. Comm'r of Soc. Sec.*, 275 F.3d 235, 241 (6th Cir. 2002); *accord,McFarland v. Astrue*, 288 Fed.

**MEMORANDUM DECISION AND ORDER - 15**

Appx. 357, 359 (9th Cir. 2008).

Substantial evidence in the record supports the ALJ's conclusions regarding the medical opinion evidence in the record, and the resulting RFC and hypothetical posed to the vocational expert. Petitioner takes issue with the hypothetical question posed by the ALJ, arguing that the ALJ failed to account for all of Petitioner's limitations. However, the ALJ need not include limitations that are not supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). The Court finds that the ALJ did not err with respect to her consideration of the medical evidence and the resulting hypothetical posed to the vocational expert. It is not for the Court to second-guess the ALJ's resolution of the conflicting medical testimony when, as here, substantial evidence supports the ALJ's findings.

**4.      Motion to File Surreply and Motion to Strike**

On November 8, 2012, Respondent requested permission to file a surreply because of new arguments raised in Petitioner's reply memorandum. (Dkt. 21.) In response, Petitioner filed a motion to strike the motion to file a surreply. (Dkt. 23.) Dr. Holmes submitted an opinion eight months after the ALJ issued her decision. For the first time in her reply memorandum, Petitioner argued that the Appeals Council did not review or consider the post-decision evidence from Dr. Holmes, Petitioner's treating medical source. (Dkt. 20.) This argument was not made in Petitioner's opening brief. Respondent requests permission to file a surreply to address this new argument.

The Court denies the motion to file a surreply, rendering Petitioner's motion to strike it moot. The Court, which is sitting in an appellate capacity, need not consider arguments raised for the first time in a reply brief, and therefore deems the new argument by Petitioner waived. *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 878 n.4 (9th Cir. 2010); *U.S. ex. rel. Meyer v.*

**MEMORANDUM DECISION AND ORDER - 16**

*Horizon Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009) (arguments raised on appeal for the first time in a reply brief are waived); *Daulton v. Astrue*, 2:10-cv-443-REB, 2011 WL 4526745 *4 n.3 (D. Idaho Sept. 28, 2011) (refusing to consider arguments not raised in the petitioner's original briefing).

## CONCLUSION

The ALJ did not err in weighing the evidence as she did, or in finding that Petitioner's testimony regarding the severity of her psychological impairments was not fully credible. The ALJ credited Petitioner's testimony to the extent it was supported by the medical evidence in the record. The ALJ did not err with respect to her consideration of the medical evidence of record, and for crediting Dr. Moore's opinion while rejecting Dr. Alexander's and Dr. Holmes's opinions to the extent their opinions were inconsistent with the medical records as a whole.  Therefore, the Court must and will affirm the ALJ's decision.

# ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion to File Surreply (Dkt. 21) is **DENIED**, and the Motion to Strike (Dkt. 23) is **DENIED as MOOT**.

Dated: **June 03, 2013**

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 18**